IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SILVIO JOSE TURCIOS,<br>    Plaintiff,<br>  v.<br>MICHAEL J. ASTRUE,<br>    Defendant.                       / | No. C 07-04668 CRB<br>**ORDER & MEMORANDUM** |

Plaintiff Silvio Jose Turcios filed an application for social security disability insurance benefits under Title II of the Social Security Act and for supplementary security income payments under Title XVI of the Social Security Act on March 21, 2005. His application was initially denied by the Social Security Administration ("SSA") and on reconsideration. He then timely filed a request for a hearing before an administrative law judge ("ALJ"). Following a hearing, the ALJ issued a written decision dated February 7, 2007, denying Turcios' application. The ALJ found that Turcios was not disabled within the meaning of the Act and regulations. Turcios timely filed a request for review, but the Appeals Council denied review.

Turcios now seeks judicial review in this Court under 42 U.S.C. § 405(g). For the reasons set forth below, the Court GRANTS Turcios' motion for summary judgment and DENIES Defendant's cross-motion for summary judgment.

**BACKGROUND**

Plaintiff Silvio Turcios worked as a truck driver and home furniture delivery person since approximately 1983. See Administrative Record ("AR") 150. On August 28, 2002, Turcios was carrying an entertainment system up a flight of stairs when the weight shifted, resulting in a "twisting type injury." Id. Turcios has not returned to work since that date. See AR 129.

Turcios was evaluated the day of the incident, and radiographs were taken that appeared to indicate "an AC joint separation." AR 215. In September of 2002, Turcios visited orthopaedic surgeon, Dr. Joseph Cheng for "left shoulder pain." See AR 201. Dr. Cheng noted that Turcios exhibited decreased motion and pain in the left shoulder. See AR 204. On October 14, 2002, Dr. Cheng again examined Turcios, noting continued pain and recommending that Turcios return to modified work with restrictions of no overhead work and no lifting over 25 pounds. See AR 200. A cortisone shot helped the pain for ten days, but when Dr. Cheng saw Turcios on October 28, he concluded that "[Turcios] should remain on modified duties, but because no modified duty is available, he is considered to be on total temporary disability." AR 197. An MRI of the left shoulder performed in November 2002 revealed that the acromioclavivular joint was minimally enlarged, and there was fluid in the subacromial space. AR 193. Dr. Cheng concluded that Turcios could perform modified work, but no overhead lifting, no lifting over five pounds, and no pushing or pulling with the left shoulder. AR 194.

In 2002, Turcios visited a chiropractor, Dr. Minda Dudley, to obtain a second opinion. See AR 215. Although Dr. Dudley treated Turcios for four to five months, Turcios obtained no relief from the pain. Id.

Beginning in December 2003, Turcios visited orthopaedic surgeon Dr. Andrew Giovannini. In February of 2005, Dr. Giovannini diagnosed Turcios with a severe sprain of the left spine/shoulder, cuff lesion, internal derangement, impingement syndrome, radiculitis of the left arm, and double crush syndrome. See AR 137. Dr. Giovannini noted that Turcios suffered from decreased range of motion, weakness, and sensitivity to touch associated with

the left shoulder. A review of a September 2004 MRI revealed to Dr. Giovannini that Turcios exhibited "subacromial impingement and tendinitis," and that the left shoulder tendons were "swollen and surrounded by inflammatory fluid not normally present." AR 136. The MRI also showed a disc herniation in Turcios' spine. Id. Finally, Dr. Giovannini observed that although Turcios denied having depression, Turcios had trouble concentrating and sleeping, and exhibited undue irritability, fatigue and anger. AR 131. Moreover, Turcios was avoiding company and friends, a sign of "reactive depression." Id. Dr. Giovanni's prognosis concluded that Turcios' condition became permanent and stationary as of February 2, 2005, because improvement had plateaued on that date and no further improvement could be expected. AR 137.

Turcios visited Dr. Victoria Barber in April 2004 and April 2005 for a consultive medical evaluation. During the 2004 examination, Turcios reported burning pain in his neck, and a dull, deep pain radiating into his back. AR 216. Turcios acknowledged that he could lift thirty-five pounds, but claimed he could only walk six blocks. Id. Dr. Barber observed weakness on the left side, AR 217, and tenderness in the left shoulder, AR 218. Dr. Barber concluded that Turcios had a lever of permanent disability that precluded repetitive work at or above shoulder level, repetitive pushing or pulling, and repetitive heavy lifting with the left arm. See AR 223.

When she examined Turcios again in 2005, Dr. Barber reported that Turcios experienced a hot, burning pain in the neck and a knife-like pain in the shoulder. AR 151. These symptoms exacerbated in response to lifting, prolonged standing, or prolonged sitting. Id. Dr. Barber concluded that Turcios suffered from "AC joint arthrosis," arthropathy of the left rotator cuff, radiculopathy, left shoulder impingement, and cervical trapezial strain. AR 158. Again, Dr. Barber concluded that Turcios had a level of permanent disability for the left shoulder that precluded repetitive work at or above shoulder level, repetitive pushing and pulling, and repetitive heavy lifting. AR 160. Dr. Barber also found that repetitive forceful grasping with the arms should be avoided. Id.

3

United States District Court
For the Northern District of California

In December 2006, Turcios' primary care physician, Dr. Jonathan Rapp, drafted a letter concerning Turcios' state of health. Although noting that Turcios walked vigorously for exercise, Dr. Rapp confirmed that Turcios had complained of pain since 2002. AR 270. Dr. Rapp believed that Turcios suffered from "chronic low mood with anxiety," but noted that he did not display symptoms of major depressive episode. Id.

Turcios applied for disability benefits and Supplemental Security Income benefits in March 2005. Basing its decision on the medical reports of Dr. Giovannini, the Social Security Administration denied the claim initially and upon reconsideration. See AR 28-38. Turcios requested a hearing before an Administrative Law Judge ("ALJ"), which took place on December 19, 2006. AR 277-304.

At the hearing, Turcios testified that he could only walk two blocks, lift fifteen to twenty pounds, and perform no overhead activity as a result of pain in his elbows, left leg, back, and neck. See AR 284-85. Turcios also testified that the pain interfered with his sleep and concentration. AR 287. The ALJ also heard testimony from medical expert Dr. Alan Coleman, a board certified internist. Dr. Coleman testified that Turcios' "many disparate complaints of pain" could not be explained by any unifying diagnosis. AR 290. Acknowledging that MRIs revealed some spinal degeneration and "trivial abnormalities" in the left shoulder, Dr. Coleman nonetheless found that it was "difficult" to explain the pain based on the MRI results. AR 291. In short, Dr. Coleman concluded that Turcios had "some degenerative disease, but he's got diffused nonspecific complaints of pain and numbness which do not have any demonstrable organic basis." AR 292. With respect to Dr. Giovannini's diagnoses of acute sprain, radiculitis and carpal tunnel syndrome, Dr. Coleman concluded that "[a]cute sprains get better," that Turcios had no findings consistent with radiculitis, and there were no clinical findings of carpal tunnel. See AR 295. Dr. Coleman observed that Dr. Barber's conclusions – that Turcios had acromial clavicular joint strain, left shoulder strain impingement, trapezial strain and carpel tunnel syndrome – were more restricted than Dr. Giovannini's. See AR 298.

Vocational expert Joel Greenberg testified that despite Turcios' limitations, he could work as a small product assembler. AR 302.

In a written opinion, the ALJ concluded that Turcios is not disabled as that term is defined in the Social Security Act. See AR 16. The ALJ found that Turcios is not disabled because he has the residual functional capacity to perform work as a small products assembler, which is a job that exists in significant numbers in the national economy. Turcios appealed to the Appeals Council, which was denied. See AR 4.

### STANDARD OF REVIEW

This Court's jurisdiction is limited to determining whether the Social Security Administration's denial of benefits is supported by substantial evidence in the administrative record. See 42 U.S.C. § 405(g). A district court may overturn a decision to deny benefits only if it is not supported by substantial evidence or if the decision is based on legal error. See Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995); Magallenes v. Bowen, 881 F.2d 747, 750 (9th Cir. 1989). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Andrews, 53 F.3d at 1039. Determinations of credibility, resolution of conflicts in medical testimony and all other ambiguities are to be resolved by the ALJ. See id.; Magallenes, 881 F.2d at 750. The decision of the ALJ will be upheld if the evidence is "susceptible to more than one rational interpretation." Andrews, 53 F.3d at 1040.

### DISCUSSION

In determining whether a claimant is entitled to benefits, an ALJ conducts a five-step sequential inquiry. 20 C.F.R. § 416.920. At the first step, the ALJ considers whether the claimant is currently engaged in substantial gainful activity (i.e., if the plaintiff is currently working); if the claimant is not engaged in substantial gainful activity, the second step asks if the claimant has a severe impairment or combination of impairments (i.e., an impairment that has a significant effect on the claimant's ability to function); if the claimant has a severe impairment, the third step asks if the claimant has a condition which meets or equals the

conditions outlined in the Listings of Impairments in Appendix 1 of the Regulations (the "Listings"); if the claimant does not have such a condition, the fourth step asks if the claimant is capable of performing his past relevant work; if the claimant is not capable of performing his past relevant work, the fifth step asks if the claimant has a residual functional capacity ("RFC"), i.e., whether plaintiff is capable of performing other work which exists in substantial numbers in the national economy, despite his limitations. Id. §§ 404.1520(b)-404.1520(f)(1).

In the instant case, there is no disagreement concerning the first four steps of the analysis. First, the ALJ found that plaintiff had not been engaged in substantial gainful activity since August 28, 2002. AR 18. Second, the ALJ concluded that plaintiff suffers from (1) multi-level degenerative disc disease of cervical spine, (2) left shoulder impingement, and (3) carpal tunnel syndrome, which significantly produce more than a minimal effect on Turcios' ability to work. Id. Third, the ALJ found that the plaintiff did not suffer from any condition that meets or equals the conditions outlined in the Listings. AR 19. Fourth, the ALJ determined that the plaintiff could not perform her past relevant work due to her condition. AR 21.

The parties disagreement stems from step five, wherein the ALJ found that Turcios, at all relevant times, was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," specifically as a small product assembler. AR 22. Based on step five of his analysis, the ALJ therefore concluded that plaintiff was not disabled under the Act. AR 23. Turcios challenges the ALJ's conclusion, arguing that the ALJ committed legal error in the process of analyzing Turcios' claim, which resulted in an improper denial of benefits. Because Turcios forwards numerous challenges, the Court addresses each in order.

I. Exclusion of Restrictions Imposed by Dr. Giovannini

Turcios argues that although the ALJ expressly accepted the opinion of treating physician Dr. Giovannini, the ALJ failed to include all of the restrictions outlined by the doctor in the assessment of Turcios' RFC. Turcios' argument is unpersuasive; the Court

6

does not agree that by failing to expressly list all of Dr. Giovannini's restrictions, the ALJ thereby rejected them.

At the fifth step of the sequential inquiry set forth above, the ALJ is required to determine the plaintiff's RFC by considering the plaintiff's age, education, and work experience, and must assess all the evidence – including the claimant's and others' descriptions of limitation, and medical reports – to determine what capacity the claimant has for work despite his impairments. See 20 C.F.R. §§ 404.1545(a), 416.945(a). After summarizing the medical evidence in the record, the ALJ concluded that Turcios could perform light work with the following additional restrictions: no repetitive work at left shoulder level, no repetitive pushing or pulling on the left side, no repetitive cervical motion, and no bilateral forceful grasping. See AR 21.

An ALJ's determination of a claimant's RFC will be affirmed if the ALJ applied the proper legal standard and his decision is supported by substantial evidence. See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005). Turcios argues that the ALJ's determination is legally flawed because it did not expressly set forth limitations identified by Dr. Giovannini, such as neck and shoulder pain and numbness, clumsiness in the use of Turcios' hand, shaking of the hand after repeated firm grip or manipulation, and aggravation of pain associated with repeated bending, climbing or pulling.

In determining the RFC, the ALJ is required to take into account those limitations for which there is record support, but the Court is aware of no precedent requiring that the ALJ expressly address each limitation supported by the record. Here, although the ALJ did not list every single limitation identified by Dr. Giovannini, the ALJ's RFC determination is consistent with all of the doctor's observations about Turcios' physical limitations. Dr. Giovannini concluded that Turcios' pain was aggravated by repetitive motions, but also believed that Turcios was "suited for Vocational Rehabilitation to a lighter job." AR 147. The Court does not agree with Plaintiff that Dr. Giovannini's opinion precludes or conflicts with the ALJ's determination that Turcios could perform light work with restrictions.

1  "The ALJ must either accept the opinions of [claimant's] treating physicians or give
2  specific and legitimate reasons for rejecting them." Embrey v. Bowen, 849 F.2d 418, 422 n.3
3  (9th Cir. 1988). To be sure, the ALJ provided no justifications for rejecting limitations
4  identified by Dr. Giovannini, but had no reason to since the ALJ essentially adopted Dr.
5  Giovannini's findings. Accordingly, the Court rejects Plaintiff's first argument based on the
6  ALJ's failure to expressly affirm each of Dr. Giovannini's opinions.

## II. Substantial Evidence to Support RFC Determination

Turcios next argues that the ALJ's finding that he could perform light-level work with restrictions is not supported by substantial evidence. An ALJ's RFC determination must be reversed if unsupported by substantial evidence. See Bayliss, 427 F.3d at 1217.

Light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b).

The medical evidence supports the conclusion that Turcios can lift up to 20 pounds, with frequent lifting or carrying of objects weighing up to 10 pounds. Dr. Barber concluded that Turcios can lift up to 25-30 pounds. AR 151. Turcios himself acknowledged that he can lift between 25 and 35 pounds. AR 151, 216.

There is also substantial evidence in the record to support the conclusion that Turcios can walk or stand "a good deal." In the most recent medical evaluation available, primary care physician Dr. Rapp observed that Turcios is able to walk vigorously for exercise. AR 270.

Finally, although some light work requires pushing and pulling, the ALJ's RFC expressly accounted for the fact that Turcios cannot engage in any repetitive work at left shoulder level, repetitive pushing or pulling on the left side, repetitive cervical motion, or bilateral forceful grasping. See AR 21. These limitations respect the opinion of Turcios' physicians that he suffers pain as the result of repeated firm gripping, repetitive lifting or

8

carrying with the left side, and repetitive lifting or reaching with the left arm. Thus, the ALJ's RFC determination was supported by substantial evidence and is not contrary to the accepted opinion of Turcios' treating physician.

### III. Turcios' Mental Impairment

Turcios argues that the ALJ committed legal error by ignoring evidence of Turcios' mental impairment. Because Turcios has a "colorable claim" of mental impairment, the Court agrees that the ALJ's failure to consider the severity and impact of Turcios' mental impairment was legal error that mandates remand.

In Gutierrez v. Apfel, 199 F.3d 1048, 1051 (9th Cir. 2000), the Ninth Circuit held that an ALJ's failure to properly evaluate the severity of the claimant's alleged mental impairment – as required by 20 C.F.R. § 404.1520a – requires reversal if the claimant has a "colorable claim of a mental impairment." Gutierrez construed an earlier version of § 1520a by which the ALJ was required to fill out and attach a specified form, but the regulation still requires ALJs to follow a special technique in evaluating mental impairments and to "document application of the technique in the decision." 20 C.F.R. § 404.1520a(e). Specifically, the regulation requires the ALJ's decision to "include a specific finding as to the degree of limitation in each of the functional areas described" in the regulation. Id. § 404.1520a(e)(2).

It is undisputed that the ALJ's decision in this case does not include specific findings related to the four functional areas described in § 1520a(c). That omission was legal error because Turcios has a "colorable claim" of mental impairment. A claim is "colorable" if it is not "wholly insubstantial, immaterial, or frivolous." Rolen v. Barnhart, 273 F.3d 1189, 1191 (9th Cir. 2001) (citations omitted). The record reveals that two physicians – Turcios' treating physician and his primary physician – both raised the specter of debilitating depression. Dr. Giovannini opined that Turcios might have reactive depression, and noted that Turcios exhibits undue fatigue, irritability, and anger. AR 131. Dr. Giovannini also observed that Turcios avoids company and friends, a sign of depression. Id. Dr. Rapp diagnosed Turcios with a "mood disorder," and concluded that the disorder might interfere with Turcios' ability

9

to work. AR 271. Dr. Rapp concluded that Turcios' mood was troubling enough to merit "careful evaluation and aggressive treatment." Id.

It may be that the ALJ will conclude that Turcios' depression is not sufficiently severe to compel a finding of disability. However, because the ALJ failed to address the issue of mental disability, it is impossible for this Court to review the ALJ's final determination. That is so because the Court cannot predict how Turcios' depression would impact the various steps in the ALJ's analysis, including whether Turcios' impairment affects his RFC and how his impairment would alter the answer given to the hypothetical posed to the vocational expert at step five.

By failing to consider the impact of Turcios' depression on the five-step analysis, the ALJ committed a legal error that cannot be considered harmless. See Behn v. Barnhart, 463 F. Supp. 2d 1043, 1047-48 (C.D. Cal. 2006). Accordingly, this matter must be remanded for rehearing.

### IV. Rejection of Turcios' Pain Testimony

Turcios challenges the ALJ's decision to reject his testimony regarding the intensity, duration, and limiting effects of his pain.

In deciding whether to admit a claimant's subjective symptom testimony, the ALJ must engage in a two-step analysis. See Smolen v. Chater, 80 F.3d 1273, 1281 (9th Cir. 1996). Under the first step prescribed by Smolen, the claimant must produce objective medical evidence of underlying "impairment," and must show that the impairment, or a combination of impairments, "could reasonably be expected to produce pain or other symptoms." Id. at 1281-82. If this test is satisfied, and if the ALJ's credibility analysis of the claimant's testimony shows no malingering, then the ALJ may reject the claimant's testimony about severity of symptoms with "specific findings stating clear and convincing reasons for doing so." Id. at 1284.

Because Turcios produced objective evidence that he suffers from cervical degenerative disease, left shoulder impingement, and bilateral carpal tunnel syndrome – impairments which can reasonably be expected to produce pain or other symptoms – he

1  satisfied the first step in the <u>Smolen</u> analysis. Under the second step, the ALJ was required
2  to analyze the credibility of Turcios' testimony regarding the severity of his symptoms.

3      As a threshold matter, when an ALJ discounts pain testimony, he is required to
4  "identify what testimony is not credible." <u>Lester v. Chater</u>, 81 F.3d 821, 834 (9th Cir. 1995).
5  "General findings are insufficient[.]" <u>Id.</u> The ALJ failed to identify with any precision what
6  testimony he disbelieved. This Court cannot therefore properly review the ALJ's credibility
7  analysis and remand is required.

8      Even if the ALJ had identified what testimony he found not credible, there were
9  numerous problems with his justifications. "In weighing a claimant's credibility, the ALJ
10 may consider his reputation for truthfulness, inconsistencies either in his testimony or
11 between his testimony and his conduct, his daily activities, his work record, and testimony
12 from physicians and third parties concerning the nature, severity, and effect of the symptoms
13 of which he complains." <u>Light v. Soc. Sec. Admin.</u>, 119 F.3d 789, 792 (9th Cir. 1997). The
14 ALJ provided four reasons for discrediting Turcios' testimony: (1) Turcios' sprains had
15 improved; (2) the medical evidence showed no significant abnormalities in the shoulder; (3)
16 Turcios had completed a vocational rehabilitation program and was certified as a bus driver;
17 and (4) Dr. Barber and Dr. Giovannini indicated that vocational rehabilitation would be
18 reasonable. <u>See</u> AR 20.

19     The first justification provided was clearly erroneous. There is no evidence in the
20 record that Turcios' sprains <u>had</u> improved. Rather, the medical expert merely opined at the
21 hearing that, in general, sprains do improve. AR 294.

22     Second, an ALJ may not disbelieve a claimant's testimony about the severity of pain
23 merely because no objective medical evidence supports that testimony. <u>See</u> <u>Light</u>, 119 F.3d
24 at 792-93. Once, as here, the claimant produces medical evidence of an underlying
25 impairment which is reasonably likely to be the cause of the alleged pain, the claimant is not
26 required to adduce medical findings that support the severity of pain. <u>See</u> <u>Bunnell v.</u>
27 <u>Sullivan</u>, 947 F.2d 341, 343 (9th Cir. 1991) (en banc).
28

1    Third, the record is not clear that Turcios did complete a vocational rehabilitation
2 program. Turcios testified that he did not complete the program because of pain. See AR
3 281. Because the record is in some conflict whether Turcios failed to take the final driving
4 exam because of language barriers, see AR 88, or because of pain, see AR 270, the ALJ
5 should resolve the evidentiary conflict if he intends to rely again on Turcios' involvement in
6 a rehabilitation program.

7    Fourth, the most defensible justification provided by the ALJ was that Dr. Barber and
8 Dr. Giovannini both indicated that vocational rehabilitation would be appropriate in Turcios'
9 case. See AR 147 (report of Dr. Giovannini concluding that Turcios is "suited for Vocational
10 Rehabilitation to a lighter job"); AR 161 (report of Dr. Barber finding that "vocational
11 rehabilitation is reasonable in this case"). However, because the ALJ did not identify what
12 part of Turcios' testimony he viewed as not credible, the Court cannot properly analyze
13 whether the Giovannini and Barber reports provide clear and convincing justification for the
14 ALJ's conclusion. The Court will simply note that although the reports do bear, to some
15 degree, on the effect of Turcios' pain, they are not inconsistent with Turcios' testimony about
16 the severity of his pain. That is to say, while the recommendations for vocational
17 rehabilitation undercut Turcios' claim that he cannot work because of the pain, see AR 286,
18 they do not conflict with, for example, Turcios' statement that his pain is an "eight" on a
19 scale of one-to-ten, see AR 283. Indeed, Dr. Giovannini appeared to believe that Turcios'
20 pain experience was consistent with the clinical findings. See AR 138 n.8.

21    Remand is necessary so the ALJ can identify precisely what pain testimony he
22 believes is not credible. The Court hopes that its analysis of the justifications provided by
23 the ALJ for not believing Turcios' testimony will guide its reassessment upon remand.

24    V. Other Work that Turcios can Perform

25    Turcios' final argument is that the ALJ failed to meet his burden in proving that he is
26 capable of performing "other work." By step five of the five-step sequential inquiry, the
27 burden shifts to the Commissioner to prove that, based on the claimant's RFC, age,
28 education, and past work experience, he can perform some type of substantial gainful activity

that exists in "significant numbers" in the national economy. See Smolen, 80 F.3d at 1291; 20 C.F.R. § 404.1520(f). If he can, he is not disabled; if he cannot, he is disabled. Smolen, 80 F.3d at 1291.

The ALJ may meet his burden under step five by propounding to a vocational expert a hypothetical that is based on medical assumptions supported by substantial evidence in the record and that reflects all the claimant's limitations. See Roberts v. Shalala, 66 F.3d 179, 184 (9th Cir. 1995). The ALJ's depiction of the claimant's impairments must be "accurate, detailed, and supported by the medical record." Tackett v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999). An ALJ posing a hypothetical question to a vocational expert "must set out all the limitations and restrictions of the particular claimant." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). It is, however, proper for an ALJ to limit a hypothetical to only those restrictions which are supported by substantial evidence in the record. See Magallanes v. Bowen, 881 F.2d 747, 756-57 (9th Cir. 1989). An ALJ "need not include all claimed impairments in his hypotheticals, [but] he must make specific findings explaining his rationale for disbelieving any of the claimant's subjective complaints not included in the hypothetical." Light v. Soc. Sec. Admin., 119 F.3d 789, 793 (9th Cir. 1997).

First, Turcios challenges the ALJ's hypothetical on the ground that it did not include all of his functional limitations, including pain. If, on remand, the ALJ concludes that Turcios' pain testimony remains not credible, then the hypothetical need not include impairments of the kind Turcios seeks. If, however, the ALJ reconsiders and concludes that Turcios' testimony was credible, then impairments associated with Turcios' pain must be included.

Second, Turcios argues that the hypothetical erroneously excluded limitations due to his mental impairment. The Court has already ordered that this case be remanded for consideration of Turcios' mental impairment. If the ALJ concludes that Turcios' depression is severe and supported by substantial evidence in the record, then impairments associated with the depression must be included in the hypothetical. Conversely, if the ALJ finds that

the depression is not severe or is unsupported by substantial evidence, then it would be proper to exclude such impairments from the hypothetical.

Third, Turcios argues that the hypothetical must include his inability to communicate in English. Although there is limited precedent on the issue, the Court concludes that the ALJ erred by relying on the vocational expert's testimony because he failed to "elicit a reasonable explanation" for the apparent conflict between the expert's testimony, the Dictionary of Occupational Titles ("DOT"), and Turcios' inability to read English. See Social Security Ruling 00-4p. The vocational expert testified that Turcios could work as a "small products assembler," but this position requires an individual to recognize 2,500 two- or three-syllable words and read 95-120 words per minute. See Dictionary of Occupational Titles 706.682-022, 1991 WL 679050 (1991). At the least, the ALJ is obligated to elicit an explanation on the record for how Turcios – who cannot read English – can adequately perform a job that requires English language skills.

Fourth, Turcios believes that the vocational expert's testimony conflicts with the DOT's assessment of physical abilities required to perform the job of small products assembler. The DOT provides that a small products assembler must, among other things, "[p]erform[] any combination of . . . repetitive tasks on assembly line to product small products," and load and unload machines. Although it is a close call, it is not clear that there is an apparent conflict between Turcios' limitations and the definition of small products assembler set forth in the DOT. The ALJ found that Turcios can perform repetitive motions with his right arm, and can perform repetitive forceful grabbing with his right hand, and non-forceful grabbing with his left. The Court cannot say that a person with Turcios' abilities is unable to perform the job of small products assembler, as that job is described by the DOT.

## VI. Remand

When the ALJ fails to use the proper legal standards, the Court has the authority to affirm, modify, or reverse the ALJ's decision "with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g); McCartey v. Massanari, 298 F.3d 1072, 1076 (9th Cir. 2002). Generally, "the proper course, except in rare circumstances, is to remand to the

14

agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (quotation and citations omitted).  Here, the ALJ's legal errors – failing to: (1) properly evaluate the severity of the claimant's alleged mental impairment; (2) identify which pain testimony he found not credible; and (3) elicit a reasonable explanation for the apparent conflict between the vocational expert's testimony and the claimant's language skills – can be corrected with further proceedings; therefore, remand for a rehearing is the appropriate remedy.

## CONCLUSION

The plaintiff's motion for summary judgment is GRANTED.  The defendant's cross-motion for summary judgment is DENIED.  The matter is REMANDED for rehearing.

**IT IS SO ORDERED.**

Dated: April 4, 2008

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE